974 F.2d 1342
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Clifford L. JACKSON, Plaintiff-Appellant,
v.
Robert CARL; Larry E. Bell; et al., Defendants-Appellees.
 No. 91-16344.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 24, 1992.*
Decided Sept. 1, 1992.
 
 Before BRUNETTI, RYMER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Clifford L. Jackson, a California state prisoner, appeals pro se the district court's summary judgment dismissal of his 42 U.S.C. § 1983 civil rights action against four Pelican Bay prison officials. Jackson contends that defendants used excessive force in attempting to confiscate a foil coffee packet from his prison cell. We review de novo, Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990), and we affirm.
 
 
 3
 * Background
 
 
 4
 At the time of this incident Jackson was a level four, maximum security prisoner serving an indeterminate term at Pelican Bay State Prison as a result of prior disciplinary rule violations. On September 8, 1990, defendants contend and Jackson acknowledges that he refused to return a foil coffee packet with his breakfast tray to Officer Rader. Defendants maintain that all foil wrapping is contraband which can be used in conjunction with other household items to assemble deadly weapons and that therefore prison policy mandates the removal of foil coffee packets from each prisoner's cell. Jackson maintains that defendants did not have a legitimate security objective when they removed the foil coffee packet from his cell because prison regulations allow a prisoner up to three foil coffee packets in his cell at any one time.
 
 
 5
 After Jackson refused to comply with Officer Rader's instruction to relinquish the coffee packet, Rader called in defendant prison officers Mayhue, Bell, and Carl to assist him. Defendants repeatedly ordered Jackson to turn over the packet and when he refused, ordered him to put his hands through the cell bars so that they could handcuff him before entering his cell. Jackson again refused to follow defendants' orders. Defendants warned Jackson that they would use an extraction team to confiscate the packet unless he relinquished it voluntarily. Defendants Bell and Carl subsequently sought and were granted authorization to form an extraction team in order to enter the cell, remove Jackson, and retrieve the packet.
 
 
 6
 A cell extraction team consists of four officers. The shield officer carries a heavy plastic shield that is used to trap the prisoner and push him to the floor. Once the prisoner is on the floor, two officers place the prisoner in handcuffs and leg irons. The fourth person on the team is the mini-baton officer who attempts to distract the prisoner while the shield officer works. Here, an unnamed sergeant also was ordered to subdue Jackson with a taser gun. After Jackson successfully blocked the taser darts, defendant Bell fired three rubber blocks from a gas charged gun into Jackson's cell. Jackson contends that the rubber blocks struck him in the thigh. Defendants assert that Jackson was never hit. After entering Jackson's cell, Rader and Mayhue pinned Jackson to the floor and placed him in leg irons and handcuffs. Jackson contends that while he was on the ground defendants repeatedly kicked and punched him. Defendants deny this contention. They assert that when the cell extraction team entered the cell, Jackson rushed at one of the officers with a prison made weapon consisting of a sock stuffed with two bars of soap. After defendants removed Jackson from the cell, he was taken to the prison infirmary where he was treated for bruises across his shoulder blades and a small cut behind his left ear. No bruises were indicated on Jackson's lower body where he alleges he was hit with a rubber block fired by the gas gun.
 
 II
 Analysis
 
 7
 A grant of summary judgment should be affirmed only if the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Kruso, 872 F.2d at 1421. If the nonmoving party bears the burden of proof at trial with respect to a material fact, that party is required to go beyond the pleadings and present specific facts establishing each element of his claim on which he would bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Smolen v. Deloitte, Haskins & Sells, 921 F.2d 959, 963 (9th Cir.1990). To state a cause of action under 42 U.S.C. § 1983, a plaintiff must demonstrate that defendants, acting under color of state law, deprived him of a right guaranteed under the Constitution or a federal statute. 42 U.S.C. § 1983; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 624 (9th Cir.1988).
 
 
 8
 The use of excessive force by a prison official constitutes a violation of the eighth amendment. See Hudson v. McMillan, 112 S.Ct. 995, 996 (1992); Spain v. Procunier, 600 F.2d 189, 194 (9th Cir.1979). Nevertheless, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Meredith v. Arizona, 523 F.2d 481, 483 (9th Cir.1975). Determining whether there has been an eighth amendment violation turns upon whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. See Hudson, 112 S.Ct. at 996 (citing Whitley v. Albers, 475 U.S. 312, 321 (1986)). Such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted are relevant to that determination. Id. at 996; Whitley, 475 U.S. at 321. Moreover, " '[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " Whitley, 475 U.S. at 321-322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)). That deference extends to prophylactic or preventative measures intended to reduce breaches of prison discipline. Id.
 
 
 9
 We agree with the district court's finding that the record indicates that the force used by the prison officials in confiscating the foil packet from Jackson's cell was not excessive.
 
 
 10
 First, because foil may, according to defendants, be formed into a deadly weapon, defendants have stated a legitimate security interest in justifying their application of force.[1]
 
 
 11
 Moreover, Jackson's refusal to comply with defendants' orders posed a threat to prison discipline and security. See Michenfelder v. Sumner, 860 F.2d 328, 331-36 (9th Cir.1988) (inmate's refusal to follow orders that were intended to assure prison security justified use of a taser gun). Second, Jackson's repeated refusals to voluntarily comply with defendants' orders and his history of disciplinary problems, including his history of assaulting and threatening prison guards, justified defendants' belief that an extraction team was necessary to ensure their own safety and prison security. Third, medical records indicate that the extent of Jackson's injuries resulting from defendants use of force were minimal.
 
 
 12
 Given these circumstances, we hold that defendants applied force in a good faith effort to maintain discipline and that accordingly, the amount of force used was not excessive.[2] See Hudson, 112 S.Ct. at 996; Whitley, 475 U.S. at 321.
 
 
 13
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 On appeal, Jackson submits a copy of what appears to be a prison regulation stating that prisoners are allowed up to three tin foil packets in their cell at any one time. Even if the regulation is legitimate and Jackson did not possess any other tin foil packets, it appears, from defendant's affidavits, that they had a good faith belief that removal of the packets was necessary to ensure prison security. See Whitley v. Albers, 475 U.S. 312, 319 (1986) ("[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the cruel and unusual clause ...")
 
 
 [2]
 Jackson also contends that the district court erred by refusing to appoint counsel under 28 U.S.C. § 1915(d) and by failing to award Jackson damages in the amount of $80,000 for defendants' refusal to comply with his interrogatories
 First, appointment of counsel under section 1915(d) is left to the sound discretion of the trial court and is granted only in "exceptional circumstances" where the legal issues are complex. Franklin v. Murphy, 745 F.2d 1221, 1236 (9th Cir.1984). Given the circumstances of this action, the district court did not abuse its discretion by not appointing counsel to aid Jackson. Second, although Rule 37(d) permits the district court to award sanctions for a party's refusal to comply with discovery, the rule does not authorize awards of money damages other than the cost of attorneys fees and reasonable expenses. Under these circumstances, the district court did not abuse its discretion by failing to award Jackson damages for defendants alleged failure to answer Jackson's interrogatories. See Reygo Pacific Corp. v. Johnston Pump Co., 680 F.2d 647, 649 (9th Cir.1982) (we review the imposition of sanctions under 37(d) for an abuse of discretion).