2002 OK 45

Michael C. WASHINGTON,
Plaintiff–Appellant,

v.

Robert BARRY, Royce Melton, Capt. Sockey, Billy Pogue, Marion Bess, Sgt. Mcmurtrey, Sgt. Williams, Sgt. Gardner, Cpl. Dodd, Cpl. Welch, Cpl. Workman, and Col. Brittingham, Defendants–Appellees.

No. 95,162.

Supreme Court of Oklahoma.

May 28, 2002.

Rehearing Denied Sept. 24, 2002.

Michael C. Washington, Plaintiff–Appellant, pro se.

W.A. Drew Edmondson, Attorney General and Barbara C. Stoner, Deputy Attorney General, for the State of Oklahoma.

## OPINION

WATT, Vice Chief Justice.

### FACTS AND PROCEDURAL BACKGROUND

¶1 The only recitation of facts in the record comes from plaintiff's verified petition and other filings because the trial court dismissed plaintiff's petition on the State's motion. Consequently, the facts set out in this opinion come exclusively from plaintiff's petition and other filings.

¶2 On February 9, 2000, plaintiff was incarcerated in a cell in the Disciplinary Segregation Unit of the Oklahoma State Penitentiary at McAlester. He objected to prison authorities putting another inmate in his cell, saying, "Plaintiff did decline the invitation, saying that he would not take a cell partner while housed on the disciplinary segregation unit." Plaintiff alleged that he "had a fundamental right to a single cell while on the

Disciplinary Segregation Unit," but did not further explain why he claimed such a right. Plaintiff also alleged that he had a "fundamental [right] to privacy and to be let alone." Consequently, prison authorities placed plaintiff in handcuffs and leg irons in order to accomplish putting the other prisoner in the cell, which they did "the following evening," apparently without incident. Later, however, plaintiff "refused to give up the handcuffs and leg restraints" and "was allowed to sleep in the restraints over night." The next day, February 11, a guard captain, one of the defendants, assembled the "Corrections Emergency Response Team" to forcibly remove the restraints, which plaintiff had refused to give up voluntarily. Plaintiff also alleged that the altercation that occurred when the Emergency Response Team removed plaintiff's restraints was videotaped by a prison employee.

¶ 3 Plaintiff alleged that he was checked after the altercation by "a nurse on the scene" who found that he "had a cut over his right eye and that the eye was swelled and red." Plaintiff also alleged that he was knocked unconscious during the altercation but regained consciousness while it was still going on. He also claims to suffer from dizziness, severe back and neck pain, and blurred vision in his right eye. Plaintiff, however, does not allege that he either sought or required medical attention after the event.

### ISSUE

¶ 4 Did the plaintiff's petition state a cause of action for damages for the use of "excessive force" by the defendants?

We answer the question "no."

### DISCUSSION

¶ 5 The Court of Civil Appeals's opinion decided only that the trial court had properly dismissed plaintiff's petition because of plaintiff's admission that he had failed to comply with the requirements of the Governmental Tort Claims Act. Although we agree with the result reached by the trial court and Court of Civil Appeals, we have granted certiorari here in order to resolve a first impression issue, which neither the trial court nor the

Court of Civil Appeals addressed: what showing must a prisoner in a penal institution make in order to state a cause of action for the use of "excessive force" against his person by prison employees when the prisoner and those employees have come into conflict?

### I. Plaintiff has no cause of action under the Governmental Tort Claims Act.

■ ¶ 6 Plaintiff's petition sought damages for assault and battery and intentional infliction of mental anguish and emotional distress arising from the *negligent* acts of defendants, not just their intentional acts. Plaintiff made no attempt in his petition to distinguish between negligence and intentional misconduct. Plaintiff made clear in his reply to the Attorney General's response to the petition for certiorari that he was claiming that the defendants were acting within the scope of their employment:

> The Governmental Tort Claims Act ("GOVERNMENTAL TORT CLAIMS ACT") was not designed to provide a blanket protection and a safe haven to intentional *or negligent* correctional officers for wrongs committed within the scope of their employment.

[Emphasis added.] Plaintiff's conclusion on this score is fundamentally wrong because § 152.1(A) the Governmental Tort Claims Act immunizes not only the state and its subdivisions but also "all of their employees acting within the scope of their employment." Further, the foregoing quote from plaintiff's petition demonstrates plaintiff's concession that the individual defendants were acting within the scope of their employment.

¶ 7 In his petition for certiorari, Plaintiff frankly admits that he did not sue the state because the Governmental Tort Claims Act, 51 O.S.2001 § 155(24), expressly immunizes the state and its subdivisions from liability arising out of the "Provision, equipping, operation or maintenance of any prison...." Thus, he concedes that he has no cause of action against the state. But Plaintiff ignores the fact that § 152.1(A) of the Governmental Tort Claims Act immunizes not only the state and its subdivisions but also "all of

their employees acting within the scope of their employment." "Scope of employment" is defined, in § 152(9), to mean "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority...." With exceptions not applicable here, § 163(C) provides that employees may not be joined as defendants for their actions that are within the scope of their employment. We discussed these statutes in *Carswell v. Oklahoma State University,* 1999 OK 102 ¶ 17, 995 P.2d 1118, 1123.

¶ 8 The statutes and cases discussed above reveal that plaintiff may not avoid the immunities granted by and the requirements of the Governmental Tort Claims Act by simply declining to join the state as a party, although he claims the prison employee defendants were acting within the scope of their employment. The prison employee defendants are expressly immunized from liability while acting within the scope of their employment. Here, although plaintiff conceded that defendants were acting within the scope of their employment, he nevertheless seeks to impose liability against them despite their immunity from liability under § 152.1(A) of the Act. Our analysis leads us to the inescapable conclusion that the Act immunizes defendants from liability for the acts complained of by plaintiff just as it does the state itself for negligent acts.

II. *Plaintiff had a potential cause of action for the excessive use of force by the defendant prison employees but failed to state an actionable claim in his petition.*

¶ 9 Plaintiff seeks to impose liability for the defendants' use of "excessive force." We have not heretofore examined the issue of what showing must be made by a prisoner in a penal institution under circumstances, such as those in the case at bar, where force has been applied to maintain discipline. We first observe that our analysis in such cases must differ significantly from the analysis we have applied in determining what was "excessive force" in cases involving police officers making arrests and those involving nursing home employees dealing with patients. See, for example, *Nail v. City of Henryetta,* 1996 OK 12 ¶ 11, 911 P.2d 914, 917 and *Rodebush v. Oklahoma Nursing Homes, Ltd.,* 1993 OK 160 ¶ 12, 867 P.2d 1241, 1245 (Okla.1993). The U.S. Supreme Court dealt with these distinctions in *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), holding that plaintiffs who are not prisoners have significantly broader rights arising from the application of force by police officers making arrests than do those who are incarcerated.

¶ 10 A prisoner in a penal institution has no right to recover for the use of excessive force by prison employees unless the force applied was so excessive that it violated the prisoner's right to be protected from the infliction of "cruel or unusual punishments" under the state and federal constitutions. Ok. Const., Art. 2 § 9; U.S. Const., 8th Amd. Thus, a prisoner has a significantly greater burden to bear in establishing his right to a cause of action than does a person who is not incarcerated. *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251. *Whitley* was different on its facts from the case at bar in that it involved the quelling of a prison riot resulting in the plaintiff-prisoner being shot. It's analysis, however, is determinative of this appeal.

¶ 11 In *Whitley,* 475 U.S. at 320–321, 106 S.Ct. at 1085, the court spelled out what is required to make actionable the conduct of prison officials when a prisoner resists the maintenance of order, as plaintiff did when he first resisted the placement of another prisoner in his cell and then resisted the removal of his restraints:

Where a prison security measure is undertaken to resolve a disturbance, such as occurred in this case, that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." [Citation omitted.]

The court also observed. *"such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted* should be considered in making the determination whether the prison officials' conduct was done maliciously and sadistically."* [Emphasis added, internal quotation marks omitted.]

▮ ¶ 12 The *Whitley* court recognized that in a prison there is an "ever present potential for violent confrontation and conflagration" so that when that potential

> ripens into *actual* [emphasis as in the original] unrest and conflict ... Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.... That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but *it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.* Accordingly, in ruling on a motion for a directed verdict in a case such as this, courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. *Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.* [Emphasis added.]

▮ ¶ 13 Plaintiff's petition reveals that the Correctional Emergency Response Team

waited thirty-six hours before undertaking to remove the restraints that plaintiff had refused to allow to be removed peaceably. These officials videotaped the incident and had a nurse "on the scene." [1] Plaintiff's petition also establishes that plaintiff did not seek, and apparently did not need, medical attention after the nurse on the scene treated him for a cut over his eye. Considering the factors designated in *Whitley*, "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted," it is clear that there has been no showing of "wantonness in the infliction of pain." We must defer to prison officials when they quell a conflict of this sort because the law "requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Whitley*, 475 U.S. at 320–321, 106 S.Ct. at 1085.

▮ ¶ 14 "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Based on the *Conley* test it is clear that plaintiff can prove no set of facts that would entitle him to relief. Plaintiff's petition shows that the injuries he suffered arose because of his refusal to comply with prison discipline. As noted in *Whitley*, we should not "freely substitute our judgment for that of officials" who have been forced to act because of the indiscipline of the prisoner-plaintiff. Plaintiff's petition also shows that the relatively minor injuries he sustained were inflicted by the prison's Emergency Response Team while it was being videotaped and in the presence of a nurse. Thus, plaintiff's allegations simply will not support the inference of "wantonness in the infliction of pain," which *Whitley* requires before a cause of action will be held to exist. Instead, plaintiff's petition clearly re-

---

**1.** Our research reveals that many, if not most, prisons have emergency response teams (sometimes called "cell extraction teams") and that they routinely videotape their actions in subduing unruly prisoners and have a nurse on the scene to immediately render any medical aid that may be required. *LaShpella v. C.E.R.T. Team*, 989 F.2d 505 (Table, Unpub.Dispo.), 1993 WL 87000 (8th Cir.); *Bennett v. Cambra*, 1997 WL 88329 (U.S.D.C.N.D.Cal.1997); *Jackson v. Carl*, 974 F.2d 1342 (Table, Unpub.Dispo.), 1992 WL 212168 (9th Cir.).

flects that force was applied by the Emergency Response Team's "in a good faith effort to maintain or restore discipline," which finding, under *Whitley* " insulates prison officials from liability. Plaintiff's pleading simply will not support the necessary showing of wilfulness and wantonness, which is necessary to impose personal liability against the individual prison employees who plaintiff has sued. Thus, we find that remanding this matter to the trial court under the state of this record would serve no useful purpose.

¶ 15 Our conclusion that plaintiff has failed to state a cause of action echos results reached in several federal cases. In *LaShpella v. C.E.R.T. Team*, 989 F.2d 505 (Table, Unpub.Dispo.), 1993 WL 87000 (8th Cir.) the court affirmed the trial court's dismissal of a prison inmate plaintiff's suit alleging that he had been injured as the result of the application of excessive force by an Iowa prison's Correctional Emergency Response Team. The court held:

> ... The extent of the injury inflicted is not dispositive, but is only a relevant factor to be considered among the other factors: the need for force; the relationship between the need and the amount of force defendants used; the threat reasonably perceived by responsible officials; and efforts made to temper the severity of a forceful response. *Id.* (discussing *Whitley* ). The district court carefully considered each of these factors in its analysis and specifically found that the force was applied in a good faith effort to restore order. Therefore, the district court concluded that appellants had failed to establish an Eighth Amendment claim. We review the factual findings of the district court for clear error only. *Burgin v. Iowa Dep't of Corrections*, 923 F.2d 637, 639 (8th Cir.1991) (citing Fed.R.Civ.P. 52(a)). We agree with the district court's findings and find no clear error. Nor do we find any error of law in the district judge's analysis. Accordingly, we affirm the district court.

¶ 16 In *Jackson v. Carl*, 974 F.2d 1342 (Table, Unpub.Dispo.), 1992 WL 212168 (9th Cir.), the court noted, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Quoting with approval, *Meredith v. Arizona*, 523 F.2d 481, 483 (9th Cir.1975). In *Jackson*, the prisoner repeatedly refused to relinquish a foil coffee packet to prison officials,[2] which necessitated the assembly of a "cell extraction team" to take it from him. In the melee the prisoner was shot with a taser gun. The prisoner was then treated "for bruises across his shoulder blades and a small cut behind his left ear." The court observed that the prisoner's "refusal to comply with defendant's orders posed a threat to prison discipline and security" so that the use of a taser gun was reasonable and had been used in good faith.

¶ 17 In *Bennett v. Cambra*, 1997 WL 88329 (U.S.D.C.N.D.Cal.) the court held that the use of pepper spray by the members of a "cell extraction team" was reasonable because the team's acts had been necessitated by the plaintiff prisoner's repeated refusal to return a steel food tray from his cell. In so holding the court said, "Plaintiff created a disturbance and security risk by refusing to return his tray and force was used [only] after defendants repeatedly requested that plaintiff return the tray voluntarily."

¶ 18 Here, by contrast to both *Jackson* and *Bennett*, the Emergency Response Team used neither tasers nor pepper spray to subdue plaintiff, despite plaintiff's pattern over the previous thirty-six hours of first refusing to peaceably accept a cell mate and then refusing to allow his restraints to be removed. Plaintiff's petition makes no allegation that would support a finding of wantonness under the circumstances present here, circumstances in which plaintiff admits that the conflict arose because of his refusal to submit to prison discipline and that the forceful response of the defendants' was carefully considered, reasonable, and necessary, given plaintiff's uncooperativeness. Further, the injuries to plaintiff were minimal, despite his resistance. We hold, therefore, that plain-

---

**2.** Foil was contraband in the prison because it could be used in conjunction with household items to assemble deadly weapons.

tiff's petition failed to state a cause of action for the use of excessive force against him by the defendant prison employees.[3]

CERTIORARI PREVIOUSLY GRANTED, COURT OF CIVIL APPEALS' OPINION VACATED, ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AFFIRMED.

WATT, V.C.J., HODGES, OPALA, KAUGER, and WINCHESTER, JJ., concur.

SUMMERS, J., concurs in part, dissents in part.

HARGRAVE, C.J., dissents:

"I would not grant certiorari."

LAVENDER and BOUDREAU, JJ., dissent.

BOUDREAU, J., with whom LAVENDER, J., joins dissenting.

¶ 1 I respectfully dissent. I agree that the need to preserve internal order and discipline and to maintain institutional security necessitates an enhanced showing by a prisoner who seeks to recover damages for the use of excessive force. I dissent because the majority opinion deprives plaintiff of any semblance of procedural due process.

¶ 2 Plaintiff is a state prisoner. He sued twelve prison guards seeking to hold them personally liable for their alleged use of excessive force. The guards moved to dismiss based on a variety of grounds. The trial court summarily dismissed the petition one day after the defendants filed their motion, *without allowing plaintiff an opportunity to respond to the guards' motion* and without a hearing. The trial court subsequently denied plaintiff's motion for rehearing/motion for new trial. The Court of Civil Appeals affirmed. Plaintiff sought certiorari.

¶ 3 In his petition for certiorari, plaintiff asks that he be allowed to respond to the individual defendants' motion to dismiss. He contends the trial court and the Court of Civil Appeals misapprehended the nature of his claim. He points out that he is suing the guards individually for their alleged use of excessive force occurring outside the scope of their employment. He emphasizes that he is not suing the state and therefore the Oklahoma Governmental Tort Claims Act is not applicable.

¶ 4 We accepted certiorari. The majority opinion acknowledges that plaintiff has a potential claim for the use of excessive force by the individual defendants. Nevertheless, the majority concludes that plaintiff failed to state a claim for excessive force because he did not allege sufficient facts in his petition. The majority reaches this conclusion despite the fact defendants had not filed a motion to dismiss on that basis (*i.e.*, for failure to state a claim).[1]

---

**3.** Although exhaustion of administrative remedies is not an issue in this appeal, we think it important to observe that federal law prohibits prisoners from maintaining suits claiming the use of excessive force against them by prison officials "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1994 ed., Supp. V). The United States Supreme Court recently construed § 1997e(a) in a case very similar to the case at bar. In *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), the court held that a prisoner who had sued prison officials individually under 42 U.S.C. § 1983 for having violated his constitutional rights by the use of excessive force against him could not prevail because he had failed to first exhaust his administrative remedies under § 1997e(a).

**1.** In reviewing a dismissal motion we must take all of plaintiff's allegations as true. *Patel v. OMH Medical Center, Inc.*, 1999 OK 33, 987 P.2d 1185, 1202. Plaintiff's allegations include the following. Officer Pogue approached plaintiff's cell and told him to "cuff up" because Pogue was going to put another inmate in the cell. Plaintiff refused, saying he would not take a cell partner while he was in the Disciplinary Segregation Unit. The next evening the Emergency Response Team placed another inmate in plaintiff's cell. Plaintiff refused to "give up the handcuffs and leg restraints" that had been placed on him. He was "allowed to sleep in the restraints overnight." The next evening eight members of the Emergency Response Team went into plaintiff's cell and "forcefully" removed his restraints. Plaintiff was sitting on the floor when the first officer entered the cell and told him to "lay down on the floor." The officer then "came down on plaintiff with his full weight, causing plaintiff's head to crash onto the floor rendering plaintiff temporarily unconscious." Plaintiff regained consciousness after a series of blows to his face and head. Another officer had his knee on the back of plaintiff's neck, striking him in the head, and the officers "continued to punch plaintiff for

¶ 5 I cannot accede to the majority opinion's conclusion for two reasons. First, the trial court deprived plaintiff of an opportunity to respond to defendants' motion to dismiss. This court has emphatically stated that a party is entitled to respond to a motion to dismiss unless all of the claims appear to be frivolous or without merit on their face. *Washington v. State,* 1996 OK 139, 915 P.2d 359. Here, there is no suggestion in the majority opinion that plaintiff's claim for excessive force is frivolous or without merit. On the contrary, the majority opinion actually identifies plaintiff's claim as raising a first impression issue in Oklahoma. Under *Washington, supra,* we should reverse the trial court and remand with directions to allow plaintiff to respond to the defendants' motion to dismiss.

¶ 6 Second, the majority opinion's analysis is a throwback to pre–1984 pleading under which cases were disposed of on the basis of claims and defenses revealed in the pleadings.[2] With the adoption of the Oklahoma Pleading Code in 1984, Oklahoma became a notice pleading state. 12 O.S.2001 § 2008(a)(1). Notice pleading narrows the function of the petition to that of giving "fair notice of the plaintiff's claim and the grounds upon which it rests." *Delbrel v. Doenges Bros. Ford, Inc.,* 1996 OK 36, 913 P.2d 1318, 1320. In this case, plaintiff's petition undeniably gave the majority sufficient notice to identify plaintiff's claim as one for excessive force; surely, then, the petition likewise gave sufficient notice to defendants.

¶ 7 Having given sufficient notice in his petition, plaintiff is entitled to have his claim proceed on the merits. If the claim is without foundation, this failing should be revealed early in the course of the proceedings. In rejecting the practice of deciding cases on the pleadings, the Committee Comment to

§ 2008 points out that "modern devices such as discovery, pre-trial conferences and summary judgments are more effective methods of performing the function of disclosing the factual and legal issues in dispute ... and disposing of frivolous or unfounded claims...." 12 O.S.2001 § 2008.

¶ 8 Finally, the majority opinion cites four federal court cases to support its conclusion that plaintiff's petition fails to state a claim. However, all four of the cases determined that the prisoners' claims were without foundation during the normal course of the trial process, not on the pleadings alone. *See LaShpella v. C.E.R.T. Team,* 989 F.2d 505, 1993 WL 87000 (8th Cir.1993) (unpublished decision) (findings of fact and conclusions of law after non-jury trial); *Jackson v. Carl,* 974 F.2d 1342, 1992 WL 212168 (9th Cir. 1992) (unpublished decision) (summary judgment); *Bennett v. Cambra,* 1997 WL 88329 (N.D.Cal.1997) (unpublished decision) (summary judgment); *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (directed verdict).

¶ 9 In sum, we should reverse the trial court's judgment and remand with directions to allow plaintiff to respond to defendants' motion to dismiss.

some time" until Officer Sockey yelled: "Alright. That's enough, put him on the bunk." The officers removed plaintiff's restraints. A nurse on the scene found plaintiff had "a cut over his right eye ... and the eye was swelled and red." As a result of the officers' conduct, plaintiff has bouts of dizziness, severe neck and back pain and blurred vision in his right eye.

2. When we adopted the Oklahoma Pleading Code we expressly declined to adopt Rule 12(c) of the

Federal Rules of Civil Procedure which allows for judgment on the pleadings. The Committee Comment to § 2012 notes that Rule 12(c) "is little more than a relic of the common law and code eras. Its preservation in the original federal rules undoubtedly was due to the undeveloped character of the summary judgment procedure and the uncertain scope of the Rule 12(b)(6) motion [to dismiss]. Neither of these rationales [is] relevant today." 12 O.S.2001 § 2012.