Dear Director Ward
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 Are physicians who provide medical care to inmates pursuant to a contract with the Oklahoma Department of Corrections considered "State employees" as defined under Section 152 of the Oklahoma Governmental Tort Claims Act, 51 O.S. 2001 Supp. 2003, §§ 151-172, and are they, therefore, entitled to the same immunity as other State employees?
 The Immunity Provided By The Governmental Tort Claims Act
¶ 1 Employees of the State, and specifically the Oklahoma Department of Corrections, are immune from tort actions brought pursuant to State law by virtue of the Governmental Tort Claims Act ("Act"), 51 O.S. 2001 Supp. 2003, §§ 151-172. SeeWashington v. Barry, 55 P.3d 1036, 1038-39 (Okla. 2002). This immunity stems from the legislative adoption of sovereign immunity:
 The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts.
51 O.S. 2001, § 152.1[51-152.1](A). Encompassed by this sovereign immunity are all activities by state employees taken within the scope of the employee's employment.[1] See id. §§ 152.1-153. Thus, as long as an employee acts within the scope of employment, an aggrieved individual's exclusive tort remedy is against the State of Oklahoma. Id. § 153(B) ("The liability of the state or political subdivision under this act shall be exclusive and in place of all other liability of the state, a political subdivision or employee at common law or otherwise."). In fact, the Act forbids an employee (except a resident physician or intern) from even being named as a defendant. Id. § 163(C) ("In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant. . . ."); see also Carswell v. Okla. State Univ.,995 P.2d 1118, 1123 (Okla. 1999).
 Applicability Of The Act To Physicians In General
¶ 2 Having reviewed the general protections provided by the Act, we now examine how the Act has historically treated physicians. Historical analysis helps us understand the nature of amendments the Legislature has recently made to the Act's definition of "employee." The Act has included certain physicians within the definition of employee since its enactment. 1984 Okla. Sess. Laws ch. 226, § 2(5). In 1986, the definition of employee was amended to read, in part:
 For the purpose of this act, physicians acting in an administrative capacity, resident physicians and resident interns participating in a graduate medical education program of the University of Oklahoma College of Medicine or the Oklahoma College of Osteopathic Medicine and Surgery and faculty members of the University of Oklahoma College of Medicine and the Oklahoma College of Osteopathic Medicine and Surgery, while engaged in their teaching duties are employees of the state. Physician faculty members of the University of Oklahoma College of Medicine and the Oklahoma College of Osteopathic Medicine and Surgery not acting in an administrative capacity or engaged in teaching duties are not employees or agents of the state. However, in no event shall the state be held liable for the tortious conduct of any physician, resident physician or intern while practicing medicine or providing medical treatment to patients.
51 O.S.Supp. 1986, § 152[51-152](5). The Oklahoma Supreme Court construed this provision in Anderson v. Eichner, 890 P.2d 1329 (Okla. 1994). According to the court, this provision:
 [C]reate[d] a dichotomous division of physicians
into two distinct categories: (a) teachers or students and (b) practitioners of medicine. For their tortious conduct as teachers or students the state is liable; for their like acts or omissions as practitioners the state is not. The final provision in § 152(5) clearly takes the employee/teaching-physicians and employee/student-physicians out of the scope of their employment when they are practising medicine — whether for educational or other purposes — yet leaves them within the protection of respondeat superior liability for those of their duties that are disconnected from treatment of patients.
Id. at 1337 (footnotes omitted).
¶ 3 In 1989, the Department of Corrections asked this office to determine whether "physicians who are employed by the Oklahoma Department of Corrections [are], generally, considered `employees' as defined under the Oklahoma Governmental Tort Claims Act. . . ." A.G. Opin. 89-75, 106. Concluding that such physicians were employees, we opined that "[w]ith regard to physicians employed by an agency which is not regularly engaged in the business of teaching, such as yours, the special rules [regarding a physician or student-physician's practice of medicine not being subject to the immunity of the Act] are inapplicable." Id. at 111. In other words, even though a physician employed by the Oklahoma Department of Corrections was practicing medicine, the exclusion of such practice from the physician's scope of employment, as discussed in Anderson, was inapplicable.
¶ 4 Three years ago the Oklahoma Supreme Court confirmed the conclusion reached in this 1989 Attorney General Opinion. InDeLaughter v. State ex rel. Oklahoma State Department of MentalHealth Substance Abuse Services, 47 P.3d 462 (Okla. 2001), the court considered whether a physician employed by the Department of Mental Health and Substance Abuse Services at its Crisis and Intervention Center would benefit from the Act's immunity when providing medical care to a patient at the Center. After a review of Anderson and the Act as a whole, DeLaughter concluded that the exemption from immunity for practicing medicine addressed byAnderson applied only to "faculty physicians, resident physicians and interns at one of the two educational institutions enumerated in the final paragraph of [Section 152(5)]." Id. at 465. Thus, the court held that the physician in question was an employee of the State and shielded by the Act. Id. at 467.
¶ 5 Shortly thereafter, the Legislature apparently codified the holding of DeLaughter by amending Section 152 so that "physicians who practice medicine or act in an administrative capacity as an employee of this state" were specifically included in the definition of employee. 2002 Okla. Sess. Laws ch. 462, § 2(5)(b)(4) (S.B. 1571).[2] At the same time, Section 152(5)(c) was amended to read:
 Except as provided in subparagraph (b) of paragraph 5 of this section, in no event shall the state be held liable for the tortious conduct of any physician, resident physician or intern while practicing medicine or providing medical treatment to patients[.]
51 O.S. Supp. 2003, § 152[51-152](5)(c) (emphasis added). Thus, the State can be held liable for the tortious practice of medicine if subparagraph (b) specifically includes the practice of medicine within a State agency physician's scope of employment.[3]
 Applicability Of The Act To Physicians Providing Medical Services To Inmates Pursuant To A Contract With The Department Of Corrections
¶ 6 The definition of employee in Section 152 was amended in 2003 to include physicians contracting with the Department of Corrections. 2003 Okla. Sess. Laws. ch. 304, § 1.[4] The amended definition of employee reads, in pertinent part:
 5. "Employee" means any person who is authorized to act in behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time basis.
. . . .
 b. For the purpose of The Governmental Tort Claims Act, the following are employees of this state, regardless of the place in this state where duties as employees are performed:
(1) physicians acting in an administrative capacity,
 (2) resident physicians and resident interns participating in a graduate medical education program of the University of Oklahoma Health Sciences Center or the College of Osteopathic Medicine of Oklahoma State University, and
 (3) faculty members and staff of the University of Oklahoma Health Sciences Center and the College of Osteopathic Medicine of Oklahoma State University, while engaged in teaching duties,
 (4) physicians who practice medicine or act in an administrative capacity as an employee of an agency of the State of Oklahoma, and
 (5) physicians who provide medical care to inmates pursuant to a contract with the Department of Corrections.
 Physician faculty members and staff of the University of Oklahoma Health Sciences Center and the College of Osteopathic Medicine of Oklahoma State University not acting in an administrative capacity or engaged in teaching duties are not employees or agents of the state.
 c. Except as provided in subparagraph (b) of paragraph 5 of this section, in no event shall the state be held liable for the tortious conduct of any physician, resident physician or intern while practicing medicine or providing medical treatment to patients[.]
51 O.S. Supp. 2003, § 152[51-152]. "When considering the construction to be given a statute, the primary consideration is to ascertain the legislative intent, and this must be determined from the language used." Stemmons, Inc. v. Universal C.I.T. Credit Corp.,301 P.2d 212, 216 (Okla. 1956). "When the language of a statute is plain and unambiguous, no occasion exists for further judicial inquiry or for the application of rules of construction, and the statute will be accorded meaning as expressed by the language employed." Pentagon Acad., Inc. v. Indep. Sch. Dist. No. 1,82 P.3d 587, 591 (Okla. 2003). "The plain meaning of a statute's language is conclusive except in the rare case when literal construction would produce a result demonstrably at odds with legislative intent." Fulsom v. Fulsom, 81 P.3d 652, 655 (Okla. 2003). Here, statutory construction is unnecessary because Section 152(5)(b)(5) is clear and unambiguous on its face.
¶ 7 Thus, the amendment specifically provided that "physicians who provide medical care to inmates pursuant to a contract with the Department of Corrections" are employees of the State. Id.
§ 152(5)(b)(5). With the passage of Senate Bill 1571 (2002 Okla. Sess. Laws ch. 462, § 2(5)(b)), the Legislature clarified that a physician employed by the Department of Corrections is an employee within the definition of the Act despite practicing medicine, if the practice of medicine is otherwise within the scope of employment (because the scope of employment exemption found in subsection (5)(c) does not apply to the physician). With the passage of House Bill 1406 (2003 Okla. Sess. Laws ch. 304, § 1(5)(b)), it is now equally clear that the Legislature has extended the immunity provided by the Act to physicians who are providing medical services to Department of Corrections inmates through a contract for such medical services. Further, the contractor physician is immune even if he or she is otherwise a teaching physician with the University of Oklahoma Health Sciences Center or the College of Osteopathic Medicine of Oklahoma State University, because subsection (5)(b)(5) specifically includes the provision of medical care to inmates within such physicians' scope of employment.
¶ 8 It is, therefore, the official Opinion of the AttorneyGeneral that:
 Physicians who provide medical care to inmates pursuant to a contract with the Oklahoma Department of Corrections, including teaching physicians with the University of Oklahoma Health Sciences Center or the College of Osteopathic Medicine of Oklahoma State University, are considered to be State employees as defined under Section 152 of the Oklahoma Governmental Tort Claims Act, 51 O.S. 2001 Supp. 2003, §§ 151-172, and are entitled to the same immunity as other State employees while providing medical care to inmates under the custody and control of the Oklahoma Department of Corrections.
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 GREGORY THOMAS METCALFE Assistant Attorney General
[1] `Scope of employment' means performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud[.]
51 O.S. Supp. 2003, § 152[51-152](9).
[2] This subsection has subsequently been amended to read: "physicians who practice medicine or act in an administrative capacity as an employee of an agency of the State of Oklahoma. . . ." 2003 Okla. Sess. Laws ch. 304, § 1(5)(b)(4) (H.B. 1406). See also 2004 Okla. Sess. Law Serv. ch. 46, § 1 (H.B. 2263) (amendments were made to Section 152 in the 2004 Second Regular Session of the Forty-Ninth Legislature; however, they are not germane here).
[3] Shortly before Senate Bill 1571was introduced, (2002 Okla. Sess. Laws ch. 462, § 2), this office issued an Opinion, based on 51 O.S. Supp. 2001, § 152[51-152](5)(c), that concluded:
 1. From and after November 1, 2001, physicians, resident physicians and interns who are employed by the State of Oklahoma and who practice medicine or provide medical treatment to patients as a part of the duties of their office and lawfully assigned tasks are not covered by the sovereign immunity of the State or the Oklahoma Governmental Tort Claims Act.
A.G. Opin. 01-39, 187. With Senate Bill 1571 the Legislature apparently concluded that it would be undesirable to exclude these physicians from the immunity provided by the Act.
[4] See also 2004 Okla. Sess. Law Serv. ch. 46, § 1 (H.B. 2263) (amendments were made to Section 152 in the 2004 Second Regular Session of the Forty-Ninth Legislature; however, they are not germane here).