261 P.3d 627 (2011)
2011 OK CIV APP 98
Antonio A. BRYSON, Plaintiff/Appellant,
v.
OKLAHOMA COUNTY ex rel. OKLAHOMA COUNTY DETENTION CENTER, Defendant/Appellee.
No. 108,534.
Court of Civil Appeals of Oklahoma, Division No. 2.
June 30, 2011.
*629 Kenyatta R. Bethea, Holloway Bethea & Osenbaugh, PLLC, Oklahoma City, Oklahoma, for Plaintiff/Appellant.
David Prater, District Attorney, Sandra Howell-Elliot, Assistant District Attorney, Oklahoma City, Oklahoma, for Defendant/Appellee.
JOHN F. FISCHER, Vice-Chief Judge.
¶ 1 Antonio A. Bryson appeals the judgment of the district court granting defendant Oklahoma County's motion for summary judgment. The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(b), 12 O.S. Supp. 2010, ch. 15, app. 1, and the matter stands submitted without appellate briefing. We affirm the district court's order granting the County's motion for summary judgment with respect to Bryson's tort claims for assault, battery and negligence, Bryson's constitutional claims based on Okla. Const. art. 2, § 9 and the Eighth Amendment to the United States Constitution, and Bryson's claim based on the use of force policy and failure to train. We reverse with respect to Bryson's 42 U.S.C. § 1983 claim based on the Fourth Amendment to the United States Constitution and his claim for violation of Okla. Const. art. 2, § 30, and remand for further proceedings.

BACKGROUND
¶ 2 Bryson was arrested on April 1, 2007, and taken to the Oklahoma County jail. During processing Bryson was verbally abusive to officers and refused to take a TB exam. In order to search Bryson, Scott Miller, a detention officer employed by the Oklahoma County Sheriff's Office, was asked to take Bryson to a changing area and "dress him out" in County jail clothing. When they returned to the processing area, Miller handcuffed *630 Bryson to a bench. Bryson continued his verbal abuse of officers and was inciting other prisoners in the area. Bryson also asked Miller why he was verbally abusing prisoners during this time. Miller decided to move Bryson to a holding cell to keep him from agitating other inmates in the book-in area. Miller took Bryson's handcuffs off and ordered him to stand. Bryson refused. After waiting only a few seconds, Miller grabbed Bryson, stood him up, shoved him into a wall and eventually took him to the floor. Miller ordered Bryson to turn onto his stomach and when Bryson refused, Miller delivered two "knee strikes" to Bryson's back. Bryson turned onto his stomach, was handcuffed and removed from the area. As a result of this incident, the Sheriff's Office conducted an investigation and terminated Miller.
¶ 3 Bryson's action is based on this altercation with Miller and asserts various tort and constitutional claims. He seeks recovery for actual damages in excess of ten thousand ($10,000) dollars and punitive damages. Except for the County, all defendants including Miller have been voluntarily dismissed by Bryson.
¶ 4 The County's motion for summary judgment argues that Miller was acting outside the scope of his employment, and, therefore, the County cannot be held liable for his actions. The County contends that even if Miller were acting within the scope of his employment, it cannot be held liable on the basis of respondeat superior for two reasons: more than vicarious liability is required to show a violation of 42 U.S.C. § 1983, and as to any State claims, the Governmental Tort Claims Act provides the County immunity from Bryson's suit. In addition, the County contends that Bryson can establish no independent policy, procedure, act or custom by the County that resulted in any constitutional violation, and that the Eighth Amendment does not apply to Bryson. Finally, the County argues that the Sheriff's use of force policy is constitutional, that Miller was properly trained and supervised by the Sheriff's Office, and that pursuant to Oklahoma law the County is not responsible for the operation of the County jail or the supervision of detention officers employed by the Sheriff's Office. Bryson's response admits most of the material facts asserted in the County's motion. However, Bryson disputes the fact that Miller was acting outside the scope of his employment, and that he was properly trained and supervised. Bryson's response also asserts as an undisputed material fact that the County jail was overcrowded and understaffed. The County did not reply to Bryson's response. The Order sustaining the County's motion was filed June 24, 2010.

STANDARD OF REVIEW
¶ 5 Rule 13 of the Rules for District Courts of Oklahoma, 12 O.S. Supp.2010, ch. 2, app., governs the procedure for summary judgment in the district court. We review the district court's grant of summary judgment de novo. Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On review, we examine the pleadings and evidentiary materials submitted by the parties to determine whether there exists a genuine issue of material fact. Id. This Court bears "an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant." Copeland v. The Lodge Enters., Inc., 2000 OK 36, ¶ 8, 4 P.3d 695, 699.
¶ 6 The summary process requires that we determine whether the record reveals only undisputed material facts supporting a single inference that favors the movant's motion for summary judgment. Id. When considering a motion for summary judgment, the evidence and the inferences to be drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. Hargrave v. Canadian Valley Elec. Coop., Inc., 1990 OK 43, ¶ 14, 792 P.2d 50, 55. If the moving party has not addressed all material facts, or if one or more of such facts is not supported by acceptable evidentiary material, summary judgment is not proper. Spirgis v. Circle K Stores, Inc., 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685 (approved for publication by the Oklahoma Supreme Court). "Once defendant has introduced evidentiary materials indicating that there is no substantial controversy as to one fact material to plaintiff's cause of action and that this *631 fact is in defendant's favor, plaintiff then has the burden of showing that evidence is available which would justify a trial of the issue." Runyon v. Reid, 1973 OK 25, ¶ 13, 510 P.2d 943, 946. "Only if the court should conclude that there is no material fact in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary judgment in its favor." Copeland, 2000 OK 36, ¶ 8, 4 P.3d at 699.

ANALYSIS
¶ 7 Bryson's petition asserts six theories of recovery: (I) Assault, (II) Battery, (III) Violation of 42 U.S.C. § 1983, (IV) Violation of article 2, § 9 of the Oklahoma Constitution and the Eighth Amendment to the United States Constitution prohibiting cruel and unusual punishment, (V) Failure to train/supervise/control and (VI) Negligence.[1]

I. Assault, Battery and Negligence
¶ 8 The first two theories of recovery in Bryson's petition assert that Miller committed an assault and battery when removing Bryson to the holding cell. "[E]very person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm...." 76 O.S. 2001 § 6. Assault and battery require proof of harmful contact by the defendant or the apprehension of harmful contact. OUJI Nos. 19.1 and 19.6. See 12 O.S.2001 § 577.2 (calling for the use of Oklahoma Uniform Jury Instructions when applicable). "Contact" is the intentional touching of another person. OUJI No. 19.7; see 12 O.S.2001 § 577.2. There are no allegations in the petition that would provide a basis for concluding that anyone other than Miller participated in the alleged assault and battery. Therefore, based on the summary judgment record and taking the allegations of the petition as true,[2] Miller is the only defendant who could have committed an assault or battery and he has been dismissed.
¶ 9 Likewise, Bryson's negligence claim is also based on Miller's intentional conduct, alleged in the alternative to be negligent. In his petition, this claim is specifically asserted against the Oklahoma County Sheriff's Office, Scott Miller, Cliff Uranga, Scott Sedbrook, Renee Tiner, Bobby Carson and John Whetsel based on "the legal theory of respondeat superior." Although all of these defendants have been dismissed, Bryson's petition asserts a general claim for damages in support of his negligence claim against "the Defendants." We will assume for the purposes of the County's motion that Bryson contends that the County is liable for Miller's alleged negligence based on respondeat superior.
¶ 10 Whether the County is responsible for any assault, battery or negligent conduct by Miller is dependent on whether Miller was acting within the scope of his employment: "Any act or omission of an officer or employee while acting within the scope of [his/her] [employment/authority] is the act or omission of [the employer]." OUJI 7.7; see 12 O.S.2001 § 577.2. The County argues that it is not liable because Miller acted outside the scope of his employment.
As a general rule, it is not within the scope of an employee's employment to commit an assault upon a third person.... However, this general rule does not apply when the act is one which is `fairly and naturally incident to the business,' and is done `while the servant was engaged upon the master's business and be done, although mistakenly or ill advisedly, with a view to further the master's interest, or from some impulse of emotion which naturally grew out of or was *632 incident to the attempt to perform the master's business.' ... An employee's act is within the scope of employment if it is incident to some service being performed for the employer or arises out of an emotional response to actions being taken for the employer.... In such an instance, an employer can be held liable even if the employee acts beyond the given authority.
Rodebush By and Through Rodebush v. Oklahoma Nursing Homes, Ltd., 1993 OK 160, ¶ 12, 867 P.2d 1241, 1245 (citations omitted). "Scope of employment" is defined in the Oklahoma Governmental Tort Claims Act (GTCA) as:
performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud.
51 O.S. Supp.2010 § 152(12).
¶ 11 Generally, the determination of whether an employee was acting within the scope of employment is a question of fact "except in cases where only one reasonable conclusion can be drawn from the facts." Nail v. City of Henryetta, 1996 OK 12, ¶ 13, 911 P.2d 914, 918. The only fact in this record that speaks to the scope of Miller's employment is fact number 15 offered in support of the County's motion. County asserts that Miller acted maliciously in dealing with Bryson and is based on Bryson's testimony that he believed Miller acted maliciously. Bryson contests this fact relying on Miller's testimony that, despite the verbal abuse, the incident would not have happened if Bryson had stood up when directed, that Miller did not intend to injure Bryson, and that Miller believed his actions were within the scope of his employment. This evidence supports more than one reasonable conclusion. Therefore, we cannot conclude as a matter of law that Miller was acting outside the scope of his employment when the incident occurred. As a result, summary judgment as to Bryson's first three theories of recovery is not proper unless the County can establish some "liability-defeating defense." Reeds v. Walker, 2006 OK 43, ¶ 9, 157 P.3d 100, 106.
¶ 12 The County argues that it is not liable for Miller's actions because it has no legal responsibility for "running the jail or hiring or supervising jail employees," and because it "cannot be affirmatively linked to the alleged violations." The County relies on Meade v. Grubbs, 841 F.2d 1512 (10th Cir. 1988), for the proposition that Oklahoma counties do not have statutory authority over county jails. In Meade, the United States Court of Appeals for the Tenth Circuit affirmed the dismissal of a complaint by a pretrial detainee against the Commissioners of Oklahoma County based on the alleged use of excessive force during the booking process at the Oklahoma County jail. Citing two Oklahoma Attorney General Opinions,[3] the federal appellate court held that the Commissioners could not be liable for a deputy's alleged use of excessive force in an action filed pursuant to 42 U.S.C. § 1983 because they had "no statutory duty to hire, train, supervise or discipline the county sheriffs or their deputies." Meade, 841 F.2d at 1528. The court cited two statutes in support of this conclusion: 19 O.S. Supp.2010 § 513 ("The sheriff shall have the charge and custody of the county jail and all prisoners therein, and shall keep such jail himself, or by his deputy or jailer") and 19 O.S. Supp.2010 § 547 ("The sheriff may appoint and revoke the appointment of deputy sheriffs and detention officers"). Although the County does not assert the source of Miller's employment as a material fact, it is apparent from the record that Miller was employed by the Oklahoma County Sheriff's Office. Therefore, because the County was not Miller's employer it cannot be held vicariously liable for his *633 alleged torts. "Respondeat superior is a legal doctrine holding an employer liable for the willful torts of an employee acting within the scope of employment in furtherance of assigned duties." N.H. v. Presbyterian Church (U.S.A.), 1999 OK 88, ¶ 13, 998 P.2d 592, 598 (emphasis added); Jordan v. Cates, 1997 OK 9, ¶ 9, 935 P.2d 289, 292 (to impose liability on the basis of respondeat superior, "the relationship of master and servant must exist"). That portion of the district court's order granting judgment to the County based on Bryson's assault, battery and negligence theories of recovery is affirmed.[4]

II. Excessive Force
¶ 13 Bryson's excessive force theory of recovery relies on state and federal constitutional prohibitions against cruel and unusual punishment: Okla. Const. art. 2, § 9, and the Eighth Amendment to the United States Constitution. These provisions are identical: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted." The standard for determining whether a prisoner has stated a claim pursuant to state law against a governmental entity for use of excessive force is discussed in Washington v. Barry, 2002 OK 45, 55 P.3d 1036. The facts in Washington are similar to those in this case. Washington was incarcerated in the State penitentiary at McAlester and objected to having a new cellmate. He was handcuffed and placed in leg irons for security reasons. When prison staff tried to remove the restraints, he resisted. The staff waited thirty-six hours before trying to remove the restraints again, videotaped the incident and had a nurse present during the incident. Washington received only minor injuries. The Washington majority, although acknowledging that incarcerated persons have a constitutional right to be free from cruel and unusual punishment, found that the constitutional requirement to show wanton infliction of pain had not been met and affirmed dismissal of the petition for failure to state a cause of action.
¶ 14 The differentiating factor between Washington and this case is that Bryson was not incarcerated at the time of the altercation with Miller. He had been arrested and was in the process of being booked into jail, but he had not yet been convicted of the crime for which he was arrested nor was he being held for trial. The constitutional prohibitions on cruel and unusual punishment apply only to those convicted of a crime. Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); Ingraham v. Wright, 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 1412 n. 40, 51 L.Ed.2d 711 (1977); Washington v. Barry, 2002 OK 45, ¶¶ 9-10, 55 P.3d at 1039. Therefore, the district court correctly granted the County's motion for summary judgment with respect to Bryson's claim of cruel and unusual punishment based on a violation of Okla. Const. art. 2, § 9 or the Eighth Amendment. That portion of the order is affirmed.

III. 42 U.S.C. § 1983
¶ 15 Bryson's third theory of recovery is based on an alleged violation of his constitutional rights that he invokes pursuant to 42 U.S.C. § 1983. That statute provides in part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
The basic factual predicate for this theory of recovery is the same assault and battery Miller is alleged to have committed. However, the claim takes two forms: (1) the degree of force used by Miller was unreasonable, and (2) the failure to properly train and supervise Miller, and properly staff the jail caused Bryson's injuries. As relevant to the County's motion, three requirements of section 1983 are pertinent: (1) a person, (2) acting under color of state law, and (3) a violation of federal constitutional rights.

*634 A. The Person Requirement
¶ 16 Miller is a "person" for purposes of section 1983 as is the County. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (local governing bodies can be sued directly under section 1983 for monetary, declaratory, or injunctive relief). However, the County cannot be held liable for violating section 1983 on the basis of respondeat superior. "Congress did not intend [governmental entities] to be held liable unless action pursuant to official [governmental] policy of some nature caused a constitutional tort." Id. at 691, 98 S.Ct. at 2036. Therefore, Bryson's section 1983 claim against the County must be predicated on conduct that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or a "governmental custom" that results in a deprivation of constitutional rights. Id. at 690-91, 98 S.Ct. at 2035-36.

B. Under Color of Law
¶ 17 Although the County argues that Miller was acting outside the scope of his authority, Bryson disputes this fact. As previously stated, for purposes of the County's motion, it will be assumed that Miller was acting within the scope of his employment at the time of the altercation with Bryson. The arrest and detention of Bryson pursuant to Oklahoma law satisfies this requirement. See Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423 (10th Cir.1984) (vacated on other grounds sub nom. City of Lawton v. Lusby, 474 U.S. 805, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985)). Certainly, the County was acting pursuant to State law in providing the facility in which Bryson was being detained after his arrest. "Every county, by authority of the board of county commissioners and at the expense of the county, shall have a jail or access to a jail in another county for the safekeeping of prisoners lawfully committed." 57 O.S.2001 § 41.

C. Deprivation of Federal Constitutional Rights
¶ 18 Bryson's summary judgment response relied on the United States Supreme Court's decision in Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). However, Whitley concerned the Eighth Amendment claim of an incarcerated prisoner shot during a prison riot. With respect to pretrial detainees like Bryson, the Fourth Amendment to the United States Constitution provides the appropriate constitutional basis for analyzing Bryson's section 1983 claim.
Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right `to be secure in their persons ... against unreasonable... seizures' of the person.
Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (all claims that law enforcement officers have used excessive force in the course of an arrest should be analyzed under the Fourth Amendment).[5]
¶ 19 Not only does Graham establish the Fourth Amendment as the constitutional source of the protection afforded pretrial detainees, but also it provides the test for determining when the use of force is excessive.
Determining whether the force used to effect a particular seizure is `reasonable' under the Fourth Amendment requires a careful balancing of `the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake.
....

*635 As in other Fourth Amendment contexts, however, the `reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are `objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.
Id. at 396-97, 109 S.Ct. at 1871-72. Despite Miller's termination as a result of the Sheriff's Department's conclusion that Miller's use of force was contrary to Department policy, and the County's contention that Miller's use of force was excessive, that fact has not been judicially determined.[6] However, even assuming that the use of force here violated Bryson's Fourth Amendment rights, he still must show that violation resulted from some County policy or custom. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978).
¶ 20 Those in charge of prisons have a duty imposed by the Eighth Amendment to the United States Constitution "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). Just as that duty extends to protection from known or "sufficiently serious" threats, Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991), that duty also directly impacts the level of prison staff necessary to provide the constitutionally required protection. "Having incarcerated `persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." Farmer, 511 U.S. at 833, 114 S.Ct. at 1977 (quoting Hudson v. Palmer, 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)) (alteration in original). The Fourth Amendment protection afforded pretrial detainees is at least as demanding as the "less protective Eighth Amendment standard." Graham, 490 U.S. at 398, 109 S.Ct. at 1873. "[P]laintiffs who are not prisoners have significantly broader rights arising from the application of force by police officers making arrests than do those who are incarcerated." Washington v. Barry, 2002 OK 45, ¶ 9, 55 P.3d 1036, 1039 (citing Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865).
¶ 21 The focus of Bryson's argument concerning the County's policies and customs in the summary judgment proceedings is on the staffing at the County jail and the institutional support, or lack thereof, provided to Miller. The County asserts that the Sheriff is the person responsible for the use of force policy at the County jail, and that a "show of force is the first option in the use of force continuum." This point appears to relate to the fact that there is nothing in the record to show that Miller called for assistance from other officers before the altercation with Bryson occurred. In addition, Bryson asserts as an undisputed material fact that the County "overcrowded and understaffed the jail."[7] Bryson relies on Miller's deposition testimony to the effect that when Miller first went to work at the jail it was difficult to find applicants for detention officer positions, that those responsible for staffing misjudged where the officers who were employed should be assigned, and that even though there were more arrests and bookings at night, 115 versus 20 on occasion, there were more officers working the day shift than at night. Miller further testified that his platoon was shorthanded every night, and the receiving area *636 was understaffed the night Bryson was brought to the jail.
¶ 22 The County argues it is entitled to summary judgment because Bryson "provides no evidence that the County undertook any responsibilities with regard to running the jail or hiring or supervising jail employees... [or] was involved in creating the jail's policies or customs." The County's argument fails for three reasons.
¶ 23 First, that is not the applicable standard for summary judgment motions. "[I]f the movant has not addressed all material facts," then summary judgment is not proper. Spirgis v. Circle K Stores, Inc., 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685 (approved for publication by the Oklahoma Supreme Court).
¶ 24 Second, the County does not defeat its potential liability by showing that the County Sheriff "is the official policy-maker" at the County jail. Section 1983 extends liability to the County where the "decisionmaker possesses final authority to establish [county] policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). However, merely showing that harm resulted from a policy-maker's act is insufficient. See Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (holding that evidence establishing the sheriff hired a deputy before conducting adequate screening failed to show that the sheriff's act was the "moving force" resulting in the subsequent use of excessive force by the deputy). The Court in Brown reversed a judgment against the county in favor of a pretrial detainee, even though it was stipulated that the sheriff was the county's final policy-maker with regard to this action, because it found no official policy resulting in the use of excessive force. See id. Based on the record in this case, Bryson has established disputed material facts with respect to the adequacy of staffing at the jail and the assignment of available staff, and a connection between those disputed facts and the alleged violation of his constitutional rights. However, we agree with the County that Bryson has failed to show any constitutional defect in the use of force policy adopted by the sheriff or the training provided to Miller. With respect to these aspects of Bryson's claim, the district court properly granted summary judgment and that part of the district court's order is affirmed.
¶ 25 Third, the County's position that it is not responsible for the jail is not supported by law. The County is not required to provide its own jail. "A county may enter into contracts with private prison contractors to provide and operate jail facilities for the county." ¶ O.S.2001 § 41. However, having done so in this case, the County must discharge its responsibilities to the jail in a constitutional manner. Even though the "sheriff shall have charge of the jail," 19 O.S.2001 § 513, the County shall provide for a jail, "at the expense of the county ... for the safekeeping of prisoners lawfully committed." ¶ O.S.2001 § 41. The County's duty to provide for the jail is constitutional as well as statutory.
[I]t is conceded by all that certain necessary fundamental functions must always be actively exercised in order to preserve the existence of the state and secure to the people the rights guaranteed to them, among which are the right to life, liberty, the possession of property, and the pursuit of happiness, and should the state become so impotent as to be unable to discharge these functions, there would result a failure of the purposes for which government was established. The surest way to bring about this result is to construe the Constitution in such a way as to place it in the power of one set of officials to deprive another of the means necessary for the performance of the duties imposed upon that other. If we give the Constitution such construction the enforcement of laws for the regulation and protection of the public peace and safety in any county might, in its ultimate analysis, depend upon the whim and caprice of certain local officials who might, by failing and refusing to make proper provision therefor [sic], render it impossible to secure an enforcement of such laws by the officers charged with the duty of so doing.
*637 Smartt v. Bd. of County Comm'rs of Craig County, 1917 OK 590, ¶ 6, 67 Okla. 141, 169 P. 1101, 1102 (holding that a sheriff's lawful expenditure of money to feed prisoners in the discharge of duties imposed upon the sheriff by the Constitution and state laws constitutes a valid charge against the county). See also 2007 OK AG 35, ¶ 20. Finally, the County must pay the expenses of its constitutional obligations before it pays for other services.
We must conclude that the income and revenue of a county, including revenue derived from the maximum legislative limitation upon the rate of ad valorem taxation, must be appropriated and used for the defrayment of the cost of the constitutional governmental functions of the county in so far as it is necessary for that purpose, and that until an appropriation has been made for that purpose, no appropriation can be made for legislative governmental functions or for other expenditures of public funds....
Protest of Kansas City Southern Ry. Co., 1932 OK 328, ¶ 28, 157 Okla. 246, 11 P.2d 500, 509. Just as the County "has a federal constitutional and state statutory duty to provide medical treatment for inmates in custody," HCA Health Servs. of Oklahoma, Inc. v.Whetsel, 2007 OK 101, ¶ 10, 173 P.3d 1203, 1206, we find that constitutional duty extends to the fundamental level of protection necessary "for the safekeeping of prisoners lawfully committed." 57 O.S.2001 § 41. See Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (deliberate indifference exists where officials know of and disregard "an excessive risk to inmate health or safety").
¶ 26 Miller testified that in his opinion the night shift was consistently understaffed. He also testified that adequate staffing of the jail is not only necessary to protect jail personnel, but also necessary to protect prisoners from unlawful assault. The County's summary judgment motion provides no facts from which to conclude one way or the other whether Miller's assessment of the staffing at the County jail is correct. Therefore, for summary judgment purposes we assume that the jail was inadequately staffed at the time of the Bryson/Miller incident. Construing the facts in this case in the light most favorable to Bryson, see Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053, it is reasonable to infer that Miller was unable to first use a "show of force" because other officers were not available, and that other officers were not available because the jail was understaffed. The County has failed to eliminate the inference that other officers were unavailable because of some formal County policy or informal County custom and therefore has not met the burden required for summary judgment. See Spirgis, 1987 OK CIV APP 45, ¶ 10, 743 P.2d at 684. Either circumstance, if proven, would provide the "affirmative link" to the alleged violation of Bryson's constitutional right required by section 1983.[8]See City of Oklahoma City v. Tuttle, 471 U.S. 808, 817-24, 105 S.Ct. 2427, 2433-36, 85 L.Ed.2d 791 (1985) (plurality opinion). Even the determination to staff the night shift at a particular level, if shown *638 to be the "moving force" resulting in a violation of Bryson's constitutional rights, would be sufficient to impose liability on the County, assuming the sheriff made that decision and that the sheriff was the final County policy-maker with respect to that decision. See Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292; Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S.Ct. 1382. For summary judgment purposes, Bryson is entitled to that inference.
¶ 27 Although Bryson's injuries, if proven, do not appear to be severe, it is not necessary that a "tragic result" occur before constitutional liability is imposed. Helling v. McKinney, 509 U.S. 25, 33-34, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993). The failure to provide "for the safekeeping of prisoners lawfully committed" in the County jail exposes detention officers and prisoners to the risk of harm and may provide the deliberate indifference required to show a violation of the Fourth Amendment. See Pembaur, 475 U.S. at 483, 106 S.Ct. at 1300 (holding that municipal liability under section 1983 attaches where an official who is responsible for establishing final policy makes a deliberate choice to follow a course of action from among various alternatives). However:
[A] prison official cannot be found liable under the [Fourth] Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.
Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979. The County's summary judgment motion does not address this issue. Therefore, Bryson's Fourth Amendment claim with respect to the adequacy of staffing at the County jail cannot be resolved by summary proceedings on the basis of this record.

IV. State Constitutional Claim
¶ 28 As he did with respect to his federal constitutional claim, Bryson confuses the source of his state constitutional protection. The Oklahoma counterpart to the Fourth Amendment is found in Okla. Const. art. 2, § 30: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated...." Section 30, not section 9, of article 2 is the provision applicable to arrestees and pretrial detainees like Bryson. Although Washington v. Barry, 2002 OK 45, 55 P.3d 1036, addresses the showing those convicted of crimes must make to state a claim for violation of article 2, § 9 of the Oklahoma Constitution, that opinion establishes the legal principles necessary to determine the test for analyzing claims of excessive force by arrestees and pretrial detainees pursuant to article 2, § 30. "We first observe that our analysis [of excessive force claims by those convicted of crimes] must differ significantly from the analysis we have applied in determining what was `excessive force' in cases involving police officers making arrests...." Washington, 2002 OK 45, ¶ 9, 55 P.3d at 1038 (citing Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, for the proposition that "plaintiffs who are not prisoners have significantly broader rights arising from the application of force by police officers making arrests than do those who are incarcerated"). We therefore adopt the "reasonableness test" discussed in Washington and Graham for analyzing Bryson's claim that Miller's use of force in this instance was "excessive."
¶ 29 Although we were not required to determine the scope of the County's immunity from liability pursuant to the GTCA, 51 O.S. Supp.2010 §§ 151 to 200, with respect to Bryson's tort claims, we consider that potential defense with respect to Bryson's state constitutional claim. The County argues that pursuant to the GTCA it is immune from suit by Bryson for the conduct of Miller. Except to the extent sovereign immunity is specifically waived, "[t]he state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, *639 shall be immune from liability for torts." 51 O.S.2001 § 152.1. Where a waiver of sovereign immunity has occurred, "[t]he liability of the state or political subdivision under [the GTCA] shall be exclusive and in place of all other liability of the state, a political subdivision or employee at common law or otherwise." Id. § 153(B). Oklahoma has waived sovereign immunity in certain circumstances:
The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. The state or a political subdivision shall not be liable under the provisions of this act for any act or omission of an employee acting outside the scope of his employment.
Id. § 153(A). The County argues that sovereign immunity has not been waived with respect to the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility...." See id. § 155(24). However, based on the Supreme Court's analysis in Washington v. Barry, 2002 OK 45, 55 P.3d 1036, we hold that the GTCA is no defense to a claim for violation of Okla. Const. art. 2, § 30, brought by an arrestee or pretrial detainee.
¶ 30 As discussed, Washington v. Barry involved injuries to a non-compliant prisoner resulting from disciplinary action taken by prison officials to remove his handcuffs. With respect to the prisoner's tort claims, the Court held that section 155(24) of the GTCA immunized the governmental entity and its employees acting within the scope of their employment from suit for those injuries. The Court then addressed the prisoner's claim, based on the same incident, that his constitutional rights had been violated, concluding that the "[p]laintiff had a potential cause of action for the excessive use of force by the defendant prison employees but failed to state an actionable claim in his petition." Washington, 2002 OK 45, ¶ 9, 55 P.3d at 1038. Applying the analysis used in Whitley v. Albers, the Court found that Washington's "potential" claim failed to show the necessary "wantonness in the infliction of pain." Id. ¶ 13, 55 P.3d at 1039 (citing 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085).
¶ 31 In reaching this conclusion, the Washington Court found that the GTCA provided no immunity for Washington's claim for violation of his constitutional rights. And, the Court has consistently adhered to this position.
The purpose of § 155(4) is to protect the discretionary acts of law enforcement officers in deciding whether a given situation calls for enforcing a law or not. That choice, whichever way it goes, may result in a detriment visited upon either the person with whom the officer is engaged or upon a third person. It is the exercise of that discretion which is protected by this exemption. Once an officer makes the decision to enforce a law by making an arrest, he or she must do so in a lawful manner. If a tort is committed in the process of making an arrest, § 155(4) does not provide immunity from suit to the officer's governmental employer for the resulting damages.
Morales v. City of Oklahoma City, 2010 OK 9, ¶ 12, 230 P.3d 869, 876. See Tuffy's Inc. v. City of Oklahoma City, 2009 OK 4, ¶ 20, 212 P.3d 1158, 1167:
To construe § 155(4) as providing blanket immunity to political subdivisions for any claim arising from law enforcement would not conform to established precedent. We have consistently held that a municipality is liable for the tortious acts of police officers committed within the scope of employment as defined by the GTCA.
See DeCorte v. Robinson, 1998 OK 87, 969 P.2d 358 (affirming a judgment against a city in favor of an arrestee who had been subjected to the excessive use of a choke-hold by an off-duty police officer, finding there was evidence to support the conclusion that the officer was acting within the scope of his authority as defined in section 155(4) of the GTCA). Therefore, we find that summary judgment is not appropriate as to Bryson's state constitutional claim of excessive force.

*640 CONCLUSION
¶ 32 The district court correctly granted the County's motion for summary judgment with respect to Bryson's claim for assault, battery and negligence. Likewise, the County established that it was not Miller's employer and cannot be held liable for any torts that may have been committed by him on the legal theory of respondeat superior. Further, prior to conviction and incarceration, Bryson has no right to be free from cruel and unusual punishment based on either the Eighth Amendment to the United States Constitution or Okla. Const. art. 2, § 9. Those claims were correctly disposed of and the district court's order granting the County's motion for summary judgment is affirmed in that respect. However, the County failed to show that it had discharged its constitutional duty to adequately provide for the County jail, or that it was not responsible for staffing decisions of the County's final decision-maker with respect to that issue. Consequently, Bryson's 42 U.S.C. § 1983 claim based on an alleged violation of the Fourth Amendment to the United States Constitution, and his claim for violation of Okla. Const. art. 2, § 30, cannot be resolved on the basis of this summary judgment record. The order granting the County's motion for summary judgment in that respect is reversed and the case is remanded for further proceedings.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.
BARNES, P.J., and WISEMAN, J., concur.
NOTES
[1] Bryson's petition contains seven "causes of action" in which these six theories of recovery are stated, the seventh being a request for punitive damages. Although denominated as separate causes of action, all are based on one event, the alleged assault and battery by Miller. Therefore, Bryson has one cause of action for which he has asserted six theories of liability. See Resolution Trust Corp. v. Greer, 1995 OK 126, ¶ 11, 911 P.2d 257, 260-61.
[2] "Motions for summary judgment do not admit all the well-pleaded facts in a petition." Weeks v. Wedgewood Village, Inc., 1976 OK 72, ¶ 12, 554 P.2d 780, 784. Nonetheless, the County's motion is not predicated on denying that Miller engaged in the conduct of which he is accused by Bryson.
[3] 1979 OK AG 98 (cited for the proposition that the sheriff and the district attorney are the only two law enforcement officials in a county) and 1976 OK AG 338(cited for the proposition that a board of county commissioners does not have the authority to designate the number of deputies a sheriff may employ). Although Meade was correctly decided because there was no alleged connection between the excessive force used by sheriff's deputies and a county policy or custom, as discussed in Part III, our view of the County's statutory and constitutional responsibility for the jail differs from that expressed in Meade.
[4] Because we find that the County cannot be held liable for Bryson's tort claims, we do not address the County's immunity pursuant to the GTCA with respect to those claims.
[5] The Tenth Circuit decided Meade v. Grubbs, 841 F.2d 1512, the year before Graham v. Connor. In Meade, the Tenth Circuit determined that the Fourteenth Amendment to the United States Constitution provided arrestees and pretrial detainees protection from the use of excessive force. Although the Fourth Amendment is made applicable to the states through the Fourteenth Amendment, the United States Supreme Court clearly established in Graham that the Fourth Amendment is the substantive law providing a basis for these types of claims. See Graham, 490 U.S. at 394, 109 S.Ct. at 1871.
[6] Cf. Norton v. the City of Marietta, Oklahoma, 432 F.3d 1145, 1156 (10th Cir.2005) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").
[7] The County did not respond to this contention. Therefore, for purposes of summary judgment, this fact must be taken as true. "The moving party has the burden of showing that there is no substantial controvery [sic] as to any material fact.... After this showing, the opposing party must demonstrate ... existence of a material fact in dispute which would justify a trial." Hargrave v. Canadian Valley Elec. Coop., Inc., 1990 OK 43, ¶ 14, 792 P.2d 50, 55.
[8] These allegations distinguish this case from Estate of Crowell v. Bd. of County Comm'rs, 2010 OK 5, 237 P.3d 134, in which the alleged failure to provide adequate medical care resulted in the death of a prisoner. The record established that the sheriff had developed a policy specific to Crowell designed to provide her necessary medical care. However, it was disputed whether the sheriff and his deputies were negligent in implementing this policy or supervising and training those who had direct care of Crowell. There were no facts in that case establishing that any defective county policy or custom resulted in the denial of medical care or that the sheriff's established policy for Crowell was defective. Accordingly, summary judgment in favor of the county was affirmed. Likewise distinguishable is Madoux v. City of Norman, 2008 WL 938596 (W.D.Okla.), in which the federal district court for the Western District of Oklahoma, relying on Meade, 841 F.2d 1512, granted the county's motion to dismiss a complaint, finding the plaintiff's conclusory allegations that the county commissioners failure to properly fund the sheriff's office had resulted in a denial of medical care were insufficient to state a "plausible" claim. Cf. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (holding complaints in federal cases must contain sufficient factual matter that if true would state a claim that is plausible on its face). Oklahoma has not adopted this pleading standard. See Kirby v. Jean's Plumbing Heat & Air, 2009 OK 65, ¶ 5, 222 P.3d 21, 24 ("A petition can generally be dismissed only for lack of any cognizable legal theory to support the claim or for insufficient facts under a cognizable legal theory.").