**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DEMARCO DEON WILLIAMS,

    Plaintiff - Appellant,

v.

CITY OF TULSA; RON PALMER,

    Defendants - Appellees,

and

JEFFREY MICHAEL HENDERSON,

    Defendant.

No. 15-5002
(D.C. No. 4:11-CV-00469-TCK-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **BALDOCK**, and **GORSUCH**, Circuit Judges.
_____

    Plaintiff DeMarco Deon Williams appeals from two district court orders that

together dismissed all claims asserted against defendants City of Tulsa and Tulsa

Police Chief Ron Palmer arising out of alleged misconduct by Tulsa Police Officers,

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

particularly defendant Jeffrey Michael Henderson, in connection with Mr. Williams'

now-vacated federal conviction for drug and firearm offenses. In the first order, the

district court ruled on summary judgment that Mr. Williams' false-imprisonment

claim[1] against the City was time-barred and that Mr. Williams had failed to

demonstrate a triable issue as to the City's municipal liability on his timely claim for

malicious prosecution. In the second order, the district court dismissed as

time-barred a claim for violation of the Oklahoma Constitution asserted under *Bosh*

*v. Cherokee County Building Authority*, 305 P.3d 994 (Okla. 2013). The district

court entered judgment for the City and Chief Palmer under Fed. R. Civ. P. 54(b),

and Mr. Williams brought this appeal challenging the cited rulings. We affirm for

the reasons explained below.

## I. BACKGROUND

A little background should suffice to put the following legal analysis in

context. Mr. Williams was convicted (in 2004 and, after a reversal on Speedy Trial

Act grounds, again in 2008) of drug and firearm offenses based on evidence

developed by Tulsa Police Officer Henderson. *See United States v. Williams*,

576 F.3d 1149 (10th Cir. 2009) (affirming Williams' second conviction). In April

2010, his convictions were vacated and his indictment dismissed at the government's

request after an FBI investigation exposed corruption in the Tulsa Police Department

---

[1] For present purposes, we refer to Mr. Williams' claim for illegal detention prior to his formal arraignment as one for "false imprisonment," without any need to distinguish between the conceptually overlapping claims of false imprisonment and false arrest. *See Wallace v. Kato*, 549 U.S. 384, 388-89 (2007).

implicating Officer Henderson and undermining confidence in Mr. Williams' federal prosecution. In July 2012, Mr. Williams filed this action invoking 42 U.S.C. § 1983 and claiming that Officer Henderson had violated his constitutional rights by lying in an affidavit used to procure a warrant for a search that led to his arrest, inducing him to sign a blank confession that Officer Henderson falsely completed, and committing perjury in his ensuing prosecution. He also asserted a derivative § 1983 claim against the City, alleging that it was responsible for Officer Henderson's conduct on various theories of municipal liability.[2] The district court eventually dismissed the derivative § 1983 claim against the City (in part) as time-barred and (in its entirety) for lack of evidence creating a genuine issue of fact as to the City's liability. Thereafter, Mr. Williams amended his complaint to include the state constitutional "*Bosh* claim" noted above, for which he added Chief Palmer as a named defendant. The district court dismissed the *Bosh* claim as time-barred as well. This interlocutory appeal challenging those two rulings followed.

## II. ANALYSIS

We review de novo the dismissal of a claim as time-barred, whether the ruling is made pursuant to Fed. R. Civ. P. 12(b)(6), *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010), or on summary judgment, *Bass v. Potter*, 522 F.3d 1098, 1102 (10th Cir. 2008). We also review de novo the grant of summary judgment to the City

---

[2] Two additional claims against the City under the Oklahoma Governmental Tort Claims Act were dismissed for failure to comply with its notice requirements. The disposition of these claims is not challenged on appeal.

on Mr. Williams' unsubstantiated claim for municipal liability. *See Haines v. Fisher*, 82 F.3d 1503, 1507 (10th Cir. 1996).

## A. LIMITATIONS ANALYSIS OF § 1983 CLAIMS: FALSE IMPRISONMENT AND MALICIOUS PROSECUTION

The limitations period for civil rights claims under 42 U.S.C. § 1983 "is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Oklahoma, that is the two-year limitations provided in Okla. Stat. tit. 12, § 95(A)(3). *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011). The date of accrual is determined by federal law, under which the limitations period begins "when the plaintiff has a complete and present cause of action, that is when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (citations and internal quotation marks omitted). For a false-imprisonment claim, the distinctive feature of which is "detention *without legal process*," *id.* at 389, that occurs "when legal process was initiated" to authorize detention, *id.* at 390.[3] The district court held that Mr. Williams' claims seeking redress "for any periods of imprisonment prior to his receipt of legal process, i.e., his arraignment dates for that particular indictment, are time-barred because they accrued, at the latest, on March 10, 2008." Aplt. App. at 228. But, as the district court recognized, claims alleging

---

[3] A false-imprisonment claim accrues "either when the victim is released or when the victim's imprisonment becomes pursuant to legal process." *Mondragon v. Thompson*, 519 F.3d 1078, 1082-83 (10th Cir. 2008) (brackets and internal quotation marks omitted). The operative date is the earlier of these events; while Mr. Williams insists his claim did not accrue until his ultimate release, "[i]t ended much earlier, when legal process was initiated against him." *Wallace*, 549 U.S. at 390.

wrongful detention after initiation of process, properly deemed malicious-prosecution claims, do not accrue "until the criminal proceedings have terminated in the plaintiff's favor." *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013), *cert. denied*, 134 S. Ct. 2842 (2014); *see also Mondragon v. Thompson*, 519 F.3d 1078, 1082-83 (10th Cir. 2008). Thus, the district court held that to the extent Mr. Williams sought redress "for periods of imprisonment following his arraignments"—the vast majority of the detention he complains about—his claims "accrued on his release date in April 2010 and were therefore timely filed." Aplt. App. at 228.[4] For that reason, the district court proceeded to consider the merits of Mr. Williams' claim of municipal liability, which we take up shortly.

While we agree in broad outline with the district court's limitations analysis, we decline to rely on this ruling for several reasons. On its own terms it would dispose of only a small part of the § 1983 claim against the City (for the short period before legal process transformed false imprisonment into malicious prosecution). And a critical procedural fact reduces the practical effect of the ruling even further. The district court pegged the initiation of legal process to Mr. Williams' arraignment, leaving a clear period of post-arrest and pre-process detention. But arraignment is not the only relevant form of legal process. "The issuance of an arrest warrant

---

[4] To the extent Mr. Williams may seek redress for the stand-alone violation of his Fourth Amendment rights relating to the search of his home per se, distinct from any subsequent detention based thereon, that claim "is presumed to have accrued when the actions actually occur[red]" in 2004, *Johnson v. Johnson Cty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991).

5

represents a classic example of the institution of legal process." *Myers*, 738 F.3d at 1195 (brackets and internal quotation marks omitted). While Mr. Williams' initial detention on the day of the search (for a matter of hours) was without legal process, his subsequent arrest and continued detention was pursuant to an arrest warrant based on the search and resultant confession. Aplt. App. at 219. Thus nearly all of his detention—under allegedly wrongful but not absent legal process—falls under the rubric of malicious prosecution for which his complaint is timely. Finally, as to the remaining sliver of detention time that would fall outside the limitations period for a false-imprisonment claim, the parties debate at length whether the claim might still be saved by the deferred-accrual rule recognized in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), and elaborated on in *Wallace*, 549 U.S. at 392-95. Because, as we hold below, Mr. Williams' § 1983 claim against the City fails in its entirety due to the deficiency of his case on municipal liability, we choose to rely for our affirmance on that straightforward basis and decline to parse out and definitively resolve the various factual and legal matters surrounding the district court's alternative (and only partial) reliance on the limitations period for dismissing the claim.

## B. MUNICIPAL LIABILITY

It is well-established that a municipality is not vicariously liable under § 1983 for the misconduct of its employees, but may be held derivatively liable for such misconduct in only limited circumstances. *See Connick v. Thompson*, 563 U.S 51, 131 S. Ct. 1350, 1359 (2011). The only such circumstance argued on appeal by Mr. Williams required him to show that Officer Henderson's alleged misconduct was

6

the result of "action pursuant to official municipal policy," evidenced by a "practice[]

so persistent and widespread as to practically have the force of law." *Id.* (internal

quotation marks omitted). The sole supporting citation to the record provided by

Mr. Williams refers us generally to the district court's discussion of two internal

administrative complaints that he contends put the City on notice of a need to provide

"a mechanism to verify the veracity of the statements [Officer Henderson] made in a

search warrant affidavit." Aplt. Op. Br. at 20 (citing Aplt. App. at 232-34). As the

district court explained, these complaints established but one single incident at all

similar to the allegations here, in which (several years prior to events in this case)

Officer Henderson "potentially omitted information from a probable cause affidavit"

by "possibly omitt[ing] the presence of an individual" at a crime scene. Aplt. App.

at 234.[5] This evidence clearly fails to indicate a persistent and widespread practice of

falsification by Officer Henderson (or Tulsa Police officers in general) sufficient to

impute liability for his alleged misconduct to the City.

## C. UNTIMELINESS OF *BOSH* CLAIM

Confirming the Oklahoma Court of Appeals' decision in *Bryson v. Oklahoma

County ex rel. Oklahoma County Detention Center*, 261 P.3d 627 (Okla. Civ. App.

---

[5] Mr. Williams also submitted to the district court a document that was filed in the criminal case brought against Officer Henderson, which indicated he had been the subject of numerous other internal administrative investigations. The district court discounted this evidence for lack of information regarding the date, subject matter, or outcome of the investigations. Aplt. App. at 235. Mr. Williams does not challenge that determination and we therefore do not pursue the matter further.

7

2011), which in turn "followed the legal ground which had been plowed by" *Washington v. Barry*, 55 P.3d 1036 (Okla. 2002), the Oklahoma Supreme Court held in *Bosh* that "Okla. Const. art. 2, § 30 provides a cause of action for excessive force, notwithstanding the requirements and limitations of the [Oklahoma Governmental Tort Claims Act (OGTCA)]" and that this cause of action "applies to citizens who are seized—arrestees and pre-incarcerated detainees" as well as convicted prisoners.[6] *Bosh*, 305 P.3d 1001-02. The *Bosh* court added that its "decision shall be given retroactive application to all matters which were in the litigation pipeline, state and federal, when *Bryson . . .* was decided as well as any claims which arose when *Bryson* was decided." *Id.* at 1002. While not disputing that the allegations of his *Bosh* claim (asserted against the City, Police Chief Palmer, and Officer Henderson) would otherwise fall outside the applicable limitations period, Mr. Williams argued in the district court, as he does here, that the *Bosh* claim did not accrue until the

---

[6] The Oklahoma Court of Appeals has since held that this cause of action is not limited to the excessive-force claims considered in *Bosh* but contemplates "a broader scope of actionable claims based upon violations of constitutional rights." *GJA v. Okla. Dep't of Human Servs.*, 347 P.3d 310, 316 (Okla. Civ. App. 2015). For our analysis here, we assume the Oklahoma Supreme Court would take the same view and bring the violations at issue here within *Bosh*'s scope.

We also note that the City has brought to our attention the Oklahoma Supreme Court's decision in *Perry v. City of Norman*, 341 P.3d 689, 689 (Okla. 2014), which held that a *Bosh* claim would not be available if the allegations of constitutional wrong were remediable under the OGTCA. The City suggests this holding provides an alternative basis for affirming the dismissal of Mr. Williams' *Bosh* claim. But the City does not make any effort to explain how all of Mr. Williams' allegations are in fact remediable under the OGTCA. We decline to develop this argument for the City and express no opinion as to the effect of *Perry* on the viability of the *Bosh* claim.

8

Oklahoma Supreme Court recognized such a claim and made its decision retroactive to cases in the litigation pipeline.

The district court rejected Mr. Williams' argument as conflating retroactivity with limitations principles. As the district court noted, the Oklahoma Supreme Court made it clear in *Sholer v. State ex rel. Department of Public Safety*, 945 P.2d 469 (Okla. 1995), that a ruling made retroactive remains "subject to the proper statute of limitations," *id.* at 474, and thus a claim based on such a ruling will be time-barred if not brought within the requisite period following its accrual *based on the underlying injury*—"not the date . . . [of] the [retroactive] decision," *id.* at 475. This approach is indeed "overwhelmingly the norm," under which a fully retroactive decision applies "to all [parties] by and against whom claims may be pressed, *consistent with* res judicata and *procedural barriers such as statutes of limitations*." *James B. Beam Distilling Co. v. Georgia* (*Beam*), 501 U.S. 529, 535 (1991) (emphasis added). In other words, the retroactivity of a decision recognizing a right and the timeliness of a claim seeking redress for a violation of that right are independent inquiries. As *Beam* explained, "retroactivity in civil cases must be limited by the need for finality" and hence "once suit is barred . . . by statutes of limitation or repose, a new rule cannot reopen the door." *Id.* at 541.

On appeal Mr. Williams does not even mention *Sholer*, and he concedes that Oklahoma has followed *Beam* when interpreting the effect of decisions (like *Bosh*) made retroactively applicable to cases in the "litigation pipeline," *see, e.g.*, *City of Okla. City v. State ex rel. Okla. Dep't of Labor*, 918 P.2d 26, 31 n.1, 33 & n.8

9

(Okla. 1995) (per curiam). Yet he continues to argue that *Bosh*'s retroactive application to cases in the litigation pipeline when *Bryson* was decided rescues his claim because he "had a valid suit or case at the time *Bryson* was decided."[7] Aplt. Op. Br. at 21-22 (footnotes omitted). This argument just returns us to the conflation of retroactivity and limitations principles that the district court properly rejected.

Mr. Williams objects that the application of established limitations principles negates the benefit of *Bosh*'s retroactivity for plaintiffs like him who fall within the designated litigation pipeline but (1) seek redress for wrongs that were temporally remote by the time *Bosh* was decided and (2) had not anticipated *Bosh* by filing their claims before they became stale. That, of course, is a consequence of the separation of retroactivity and limitations principles and precisely what *Beam* explains (and *Sholer* reflects) is the balance struck between the remedial policy behind retroactivity and the finality concern behind the limitations defense. We are not in a position to reweigh such matters and strike a balance that diverges from that chosen for a state law claim by the courts of Oklahoma.

Finally, Mr. Williams invokes a faulty syllogism: (1) accrual is generally defined as the date "when a litigant could first maintain an action to a successful conclusion," *City of Tulsa v. Bank of Okla., N.A.*, 280 P.3d 314, 320 (Okla. 2011) (internal quotation marks omitted); (2) a *Bosh*-type claim could not have succeeded

---

[7] Actually, this case was not filed until after *Bryson* was decided. But this point is not material to *Bosh*'s retroactive application to the case or to our conclusion that such retroactivity does not affect the limitations analysis.

10

until *Bosh* definitively recognized the viability of such a claim; hence, (3) his claim did not accrue until *Bosh* was decided. As for the major premise, Mr. Williams does not cite any authority holding that the general definition postpones accrual until a decision definitively recognizing a claim (and making it retroactive to the plaintiff's case) comes along—perhaps many years or even decades after the underlying events. That is not surprising, as such a holding would undermine finality on an unprecedented scale—and do so, again, by effectively using retroactivity to trump limitations principles contrary to the balance struck in *Sholer* and *Beam*. The minor premise of the argument is also unpersuasive. A litigant could very well have successfully pursued a *Bosh*-type claim prior to *Bosh*'s definitive confirmation of such a claim, and in fact did so in *Bryson* (and in *Bosh* itself). With defective major and minor premises, Mr. Williams' conclusion here necessarily fails.

## III. CONCLUSION

In sum, Mr. Williams has failed to demonstrate a triable case against the City for municipal liability under § 1983 or shown that his state-law claim under *Bosh* was timely.

The judgment entered by the district court in favor of the City of Tulsa and Tulsa Police Chief Palmer is affirmed.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

11